# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| FIRST STATE CRANE SERVICE, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. K25C-07-014 JJC |
| v. | : | (Consolidated with C.A. No. K25C-08-011 NEP) |
| | : | |
| | : | |
| L & W INSURANCE, LLC; and | : | |
| THE CINCINNATI SPECIALTY | : | |
| UNDERWRITERS INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| | : | |
| Defendants. | : | |

Submitted: April 15, 2026
Decided:   June 16, 2026

## <u>MEMORANDUM OPINION & ORDER</u>

Jeffrey A. Young, YOUNG & MCNELIS, Dover, Delaware, Attorney for Plaintiff First State Crane Service, Inc.

Onofrio de Gennaro, MARON MARVEL BRADLEY ANDERSON & TARDY LLC, Wilmington, Delaware, Attorney for Defendant L & W Insurance, LLC.

R. Joseph Hrubiec, POST AND SCHELL, P.C., Wilmington, Delaware, Attorney for Defendant Cincinnati Specialty Underwriters Insurance Company.

**CLARK, R.J.**

Plaintiff First State Crane (hereinafter, "First State") filed two suits—one against its insurance carrier and one against its insurance broker—following a denial of coverage for a third-party wrongful death claim arising from a construction accident (hereinafter, the "claim"). First State's broker, L & W Insurance, LLC (hereinafter, "L & W"), procured a commercial liability policy for First State. The policy was written by The Cincinnati Specialty Underwriters Insurance Co. (hereinafter, "Cincinnati"). Cincinnati denied coverage for the claim. First State then sued L & W and Cincinnati in separate actions that are now consolidated.

This decision addresses First State's contentions that L & W negligently failed to procure adequate coverage for First State, breached their contract, and breached fiduciary duties owed First State when procuring the policy. Presently, L & W moves to dismiss First State's amended complaint on two bases: (1) expiration of the applicable negligence and contract statute of limitations, and (2) lack of subject matter jurisdiction over the breach of fiduciary duty claim.

For the reasons to follow, First State's negligence and contract claims are barred by the statute of limitations. Separately, First State's claim for breach of fiduciary duty falls outside the Superior Court's subject matter jurisdiction and must be dismissed, subject to a right of transfer to the Court of Chancery.

## I.    FACTS AND PROCEDURAL HISTORY

The following facts are drawn from First State's amended complaint and considered true for purposes of this motion. First State procured a commercial liability insurance policy from Cincinnati, using L & W as its broker.[1] The policy took effect on October 4, 2019.[2] First State then performed construction work at a Beebe Surgical Center site. On August 6, 2020, a First State employee released a crane's jib on the site and struck Jose Ramirez-Recinos, an employee of another

---

[1] D.I. 12 (Am. Compl.) at ¶ 7.
[2] Id.

2

contractor.[3]  Mr. Ramirez-Recinos' family sued First State for wrongful death and that action pends in the Superior Court.[4]

First State provided Cincinnati adequate notice of the claim, but Cincinnati denied indemnity and defense coverage on August 12, 2022.[5]  When doing so, Cincinnati relied on an exclusion in the policy for injuries suffered by other contractors, subcontractors, and their employees.[6]  As a result, First State filed separate actions against L & W and Cincinnati in the summer of 2025—more than five years after the delivery of the policy but within three years of the date of denial. The Court then consolidated the two cases.

First State's amended complaint includes three claims against L & W, all of which are implicated in this motion.  They include (1) negligent procurement of insurance, (2) breach of contract, and (3) breach of fiduciary duty.[7]  L & W moves to dismiss all three.  This decision addresses First State's claims against L & W.[8]

## II.    ARGUMENTS OF THE PARTIES

L & W first contends that both the breach of contract and negligence claims are time-barred under 10 *Del. C.* § 8106, which provides the three-year statute of limitations that applies to both claims.  In support, L & W relies primarily on the Delaware Supreme Court's decision in *Kaufman v. C.L. McCabe & Sons, Inc.*[9]  That decision, L & W contends, fixes the date Cincinnati delivered the policy to First State

---

[3] *Id.* ¶¶ 17, 18.

[4] *Id.* ¶ 19.

[5] D.I. 28, Ex. A.

[6] D.I. 12 ¶ 10, 11.  First State contends, in the portion of the consolidated action against Cincinnati, that the exclusion is ambiguous and should be construed against Cincinnati.  In the alternative, First State contends that an exclusion for any bodily injury claims suffered on the site by other contractor's employees would be unconscionable.

[7] *Id.* ¶¶ 22–32, 33–38, 39–47.

[8] There is currently a motion to intervene filed by Angela Majano de Ramirez and Jeffrey Ramirez which remains pending.  D.I. 29.  That motion seeks only to intervene against Cincinnati.  It does not impact the present decision.

[9] 603 A.2d 831, 834 (Del. 1992).

as the date of accrual for both causes of action.  Accordingly, L & W moves to dismiss the amended complaint which was filed more than three years after the delivery date.

Turning to First State's breach of fiduciary duty claim, L & W first contends that First State failed to adequately plead a fiduciary relationship between the two.[10] L & W then focuses on what should be the threshold issue regarding the fiduciary claim—whether this Court lacks subject matter jurisdiction over it.[11]

First State counters the statute of limitations defense by contending that it timely filed its negligence and contract claims because it did so within three years of when Cincinnati denied coverage.  To this end, First State reads the Superior Court's decision in *Fansler v. North American Title Insurance Company*[12] as support for applying the discovery rule regarding its claims.

First State counters L & W's contentions regarding the breach of fiduciary duty claim by first emphasizing Delaware's liberal pleading standards.  It contends that it adequately pleaded a fiduciary duty claim when it relied on L & W's expertise when selecting and placing the policy.[13]  On the issue of jurisdiction, however, First State concedes that the claim should be considered in the Court of Chancery.  It requests leave to transfer that matter to Chancery.

### III.   STANDARDS

When deciding a Rule 12(b)(6) motion, the Court must consider only the amended complaint, and any documents attached to it.[14]  When doing so, it accepts the facts alleged in the complaint as true and draws all reasonable inferences in the

---

[10] D.I. 19 ¶¶ 11–13.
[11] *Id.* ¶ 17.
[12] 2019 WL 1281432, at *3–4 (Del. Super. March 19, 2019).
[13] D.I. 22 at 2–3.
[14] *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) ("The complaint generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion to dismiss.").

4

plaintiff's favor.[15]  In Delaware, the standard to survive a motion to dismiss is reasonable conceivability.[16]  In other words, the Court may not dismiss a claim unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[17]

A statute of limitations defense is an affirmative defense.  On one hand, a plaintiff is generally not required to plead responses to affirmative defenses in his or her complaint because they have not yet been raised.[18]  Nevertheless, Superior Court Civil Rule 9(f) makes time a material element of an initial pleading when pleaded.[19]  Because "time" may then be material, when a time bar is apparent on the face of the complaint, a Rule 12(b)(6) motion may be the appropriate mechanism to address the matter.

The standard to determine whether the applicable statute of limitations bars a plaintiff's claim is the same regardless of whether it is raised in a motion to dismiss or motion for summary judgment.[20]  In a motion to dismiss, Rule 12(b)(6)'s relaxed lens applies.[21]  Here, the amended complaint provides for two possible and alternative accrual dates—either the day of policy delivery *or* the day of coverage denial.[22]

Turning to the question of subject-matter jurisdiction, the burden rests on a plaintiff under Rule 12(b)(1) to demonstrate that the Court has jurisdiction to

---

[15] *Thomas v. Capano Homes Inc.*, 2015 WL 1593618, at *2 (Del. Super. Apr. 2, 2015).

[16] *Fontana v. CSX Transp., Inc.*, 330 A.3d 967, 975 (Del. Super. 2025).

[17] *Id.*

[18] *Dyton v. Ahern*, 2025 WL 3232911, at *3 (Del. Super. Nov. 19, 2025); *see also McNair v. Taylor*, 2007 WL 1218681, at *1 n.3 (Del. Super. Mar. 30, 2007) ("[T]he plaintiff is not required to anticipate affirmative defenses in his complaint.").

[19] *Dyton*, 2025 WL 3232911, at *3.

[20] *Id.* at *4

[21] *See id.*; *see also Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319–20 (Del. 2004) (discussing a statute of limitations inquiry on a motion to dismiss).

[22] D.I. 12.

5

consider the claim.[23] Under Rule 12(b)(1), the Court may consider the pleadings and matters extrinsic to the pleadings to determine jurisdiction.[24] While the Superior Court is the State's court of general jurisdiction, under Delaware's bifurcated system of law and equity, only the Court of Chancery possesses equitable jurisdiction.[25] Accordingly, if a claim is purely equitable in nature, the Superior Court has no jurisdiction to consider it.

## IV.    ANALYSIS

First State raises three claims against L & W—negligent procurement of insurance, breach of contract, and breach of fiduciary duty. As explained below, First State's first two claims—negligent procurement and breach of contract—are barred by the applicable statute of limitations. Separately, the Superior Court has no jurisdiction over First State's breach of a fiduciary duty claim.

### A.  First State's negligent procurement claim is time-barred.

First State contends that L & W negligently selected and placed a commercial liability policy with Cincinnati. The alleged harm is a policy exclusion that makes it worthless for the purpose for which it was intended. Facially, the exclusion seems counter intuitive. It excludes bodily injury claims brought against First State by any third party for injuries suffered by the third party on a shared construction site.

A claim for negligent procurement of insurance is available when a broker procures insurance for a principal without applying reasonable diligence or care.[26] If the result of the negligent effort is a void or defective policy, the broker becomes

---

[23] *Abbott v. Vavala*, 2022 WL 453609, at *5 (Del. Ch. Feb. 15, 2022).

[24] *Id.*

[25] *See Rutledge v. Clearway Energy Grp. LLC*, ___ A.3d ___, ___, 2026 WL 548504, at *8 (Del. Feb. 27, 2026) (it is "well-settled" that Article IV § 10 confers equitable jurisdiction on the Court of Chancery).

[26] *Those Certain Underwriters at Loyd's London v. National Installment Ins. Services, Inc.*, 2007 WL 1207106, at *7 (Del. Ch. Feb. 8, 2007).

personally liable to the principal for damages proximately caused by his or her negligence.[27]

First State focuses principally on the unfairness of considering the date of delivery as the accrual date as opposed to the date of denial. It contends that Cincinnati's reliance on an ambiguous exclusion compounds that unfairness. Stated differently, First State argues that it should not be charged in this case with knowledge of L & W's negligence before Cincinnati denied the claim.

Statutes of limitations are sometimes applied unforgivingly, however. They represent the General Assembly's broad-stroke judgment regarding the appropriate balance between a litigant's ability to vindicate her rights and a defendant's interest against being forced to defend against stale matters.

Delaware applies a three-year statute of limitations to negligent procurement claims.[28] Determining the date of accrual frequently receives significant attention because it is often dispositive. In negligence actions, the claim accrues at the time of the wrongful act.[29]

Identifying the wrongful act and separating it from the first notice of harm is sometimes difficult. Some jurisdictions have resolved this difficulty in the context of negligent procurement claims as First State advocates. They do so by fixing the date of accrual as the day the insurer denies coverage under the policy.[30] Nevertheless, the Delaware Supreme Court broadly and definitively rejected that approach in *Kaufman v. C.L. McCabe & Sons, Inc.*[31] There, the Court held that the statute of limitations in negligent procurement claims runs from the date the carrier

---

[27] *Id.* (citing *Lowitt v. Pearsall Chem. Corp. of Md.*, 219 A.2d 67, 73 (Md. 1966)).
[28] *See Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d at 834 (applying 10 *Del. C.* § 8106).
[29] *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732–33 (Del. 2020).
[30] *See Kaufman*, 603 A.2d at 834 (recognizing that some jurisdictions hold that a negligent procurement claim against an insurance broker accrues when the insured suffers a loss and is denied coverage).
[31] *Id.*

7

delivers an allegedly defective policy, regardless of when the carrier later denies coverage.[32] The Court reasoned that the act of negligent placement of a policy occurs when the insured and the insurer contract.[33] In expressly rejecting the discovery rule—which is a harm-focused rule rather than act-focused—the Court emphasized its concern that deeming accrual to be the date of denial would prevent claims from accruing if there is no denial of coverage.[34] Granted, negligent procurement claims almost always arise from denied coverage and it is difficult to picture a situation where one would sue without a denial. Nevertheless, the *Kaufman* rule maintains the focus on *the act* of procurement rather than *the harm* caused by that procurement.

Notwithstanding *Kaufman*'s broad holding, First State asks the Court to apply the discovery rule to avoid dismissal. The discovery rule tolls a statute of limitations when the injury is (a) "inherently unknowable," and (b) the plaintiff is "blamelessly ignorant."[35] First State contends that it was inherently unknowable that Cincinnati would rely on this exclusion to deny coverage for such a foreseeable claim and that First State's principal—a layperson—was blamelessly ignorant of the policy's terms.

Again, first and foremost, the Court in *Kaufman* expressly rejected the same arguments.[36] There, the Supreme Court reasoned that a coverage exclusion in a commercial insurance policy is not "inherently unknowable" to a layperson who by extension is not "blamelessly ignorant" of a policy's terms.[37] Here, as in *Kaufman*,

---

[32] *Id.*

[33] *Id.* In the decision, the Supreme Court acknowledged several other jurisdictions that adopted the rule that the denial of coverage constituted the injury and that the injury, as opposed to the act, triggered accrual. The Court specifically rejected that approach. *Id.*

[34] *Id.*

[35] *ISN Software Corp.*, 226 A.3d at 733.

[36] 603 A.2d at 834–35.

[37] *Id.* at 835 ("The absence of loss of use coverage for the Kaufmans in their insurance policy was not inherently unknowable; rather, it was available to be ascertained by anyone who cared to read

First State received a copy of the insurance policy at inception and its principal had the ability to review it.[38]

First State relies on persuasive authority to distinguish the *Kaufman* decision: namely, the Superior Court decision in *Fansler v. North American Title Insurance Company*.[39] In *Fansler*, the court examined the circumstances surrounding a title company and attorney's error when drafting a deed presented to a title insurer for insurance.[40] The parcel at issue was landlocked but the two defendants nevertheless referenced an access easement in the deed that never existed.[41] As a result, the title company procured inadequate title insurance on the parcel with that mistaken assumption.[42] Litigation to remedy the defect followed in Chancery and the title insurance company denied coverage.[43] In a thoughtful decision, the *Fansler* court distinguished *Kaufman* because the defect in the deed was affirmatively misleading and could not be recognized by one untrained in property law.[44]

First State asserts that because the exclusion in this case is ambiguous, this case aligns better with *Fansler* than *Kaufman*. To this end, First State contends that the coverage exclusion in *Kaufman* was obvious on its face while the Cincinnati policy exclusion is ambiguous. That ambiguity, First State contends, made the alleged policy-shortcoming "inherently unknowable," and First State "blamelessly ignorant" of the defect.

---

the policy."); *see also Farm Family Cas. Co. v. Cumberland Ins. Co. Inc.*, 2013 WL 5496779, at *5 (Del. Super. Oct. 2, 2013) (rejecting a similar argument).

[38] *See Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 913 (Del. 1989) ("A party to a contract cannot silently accept its benefits and then object to its perceived disadvantages, nor can a party's failure to read a contract justify its avoidance.").

[39] 2019 WL 1281432, at *3–4.

[40] *Id.* at *1–2.

[41] *Id.* at *1.

[42] *Id.* at *2.

[43] *Id.* at *1–2.

[44] *Id.* at *3–4.

9

Here, the *Fansler* decision is distinguishable, and *Kaufman*'s holding controls the disposition for three reasons. First, *Fansler* examined a title defect in a deed that included an access easement where none existed. The application of the discovery rule in such cases had already enjoyed the support of a number of other cases that recognized the unknowability of such a mistake in a deed.[45] In contrast, a shortcoming in an insurance policy is deemed to be recognizable by a lay person, which the *Fansler* decision expressly recognized.[46] In other words, in *Fansler*, the inherently unknowable matter was a convoluted underlying title defect rather than a provision in an insurance policy, which makes a difference.

Second, First State provides no support for its argument that the exclusion is ambiguous. To the contrary, the policy language in this case is readable and apparent on its face. Namely, the exclusion states that "[t]his insurance does not apply to: 'Bodily injury' to: . . . [a]ny 'contractor' or 'subcontractor'. . . ."[47] The exclusion continues by defining contractor and subcontractor broadly enough to cover any person employed by any other entity at the work site other than employees of the insured.[48] Moreover, the exclusion does not require a "contractor" or "subcontractor" be in privity of contract with First State. Granted, First State emphasis regarding the unreasonableness of any construction company procuring such a policy is well taken. But, the exclusion's language is nevertheless sufficiently clear to align with *Kaufman*.

---

[45] *See, e.g., Ruger v. Funk*, 1996 WL 110072, at *3 (Del. Super. Jan. 22, 1996) (discussing *Kaufman* but still applying the discovery rule as it relates to title defects); *Pioneer Nat'l Title Ins. Co. v. Child, Inc.*, 401 A.2d 68, 71–72 (Del. 1979) (applying discovery rule to legal malpractice claim involving defective title).

[46] *See Fansler v. N.A. Title Ins. Co.*, 2019 WL 2524261, at *1 (Del. Super. June 19, 2019) (denying motion to dismiss amended complaint and commenting that "[t]he key here is not the issuance of the policy but the purported reason for its negligent procurement—*i.e.*, a title defect as opposed to an omission of coverage").

[47] D.I. 28, Ex. A.

[48] *Id.*

10

Third, even if this language were ambiguous, a possible reading to exclude coverage in this case would not make the risk of denial inherently unknowable for purposes of the discovery rule. Namely, inherent unknowability involves a higher cloud than ambiguity. Again, two reasonable readings of the language—one that excludes a foreseeable future claim and one that does not—makes the risk that the carrier will apply the exclusion apparent upon delivery. In other words, it is knowable. The focus in this case, as in *Kaufman*, must remain on *the act* of delivery rather than *the harm* caused by the allegedly defective provision.

Finally, at least two other Superior Court decisions have rejected First State's narrow reading of *Kaufman*. For instance, in *Jadczak v. Assurant, Inc.*, the court rejected application of the discovery rule in a negligent procurement case.[49] There, the allegedly hidden and unknowable defect was a lack of sufficient coverage. The court rejected application of the discovery rule in that instance by echoing the holding in *Kaufman*: specifically that "a claim relating to negligent procurement of insurance is not tolled under the time of discovery rule."[50] The Superior Court also correctly declined to apply the discovery rule in *Farm Family Casualty v. Cumberland*.[51] There, the court also held that "the procurement of the 'wrong' coverage—was not 'inherently unknowable'" because the "rule established by the [c]ourt in Kaufman is purposely broad."[52]

## B. First State's breach of contract claim is also time-barred.

The reasoning of *Kaufman* applies by analogy to First State's breach of contract claim.[53] At the outset, Section 8106's three-year statute of limitations

---

[49] *Jadczak v. Assurant, Inc.*, 2009 WL 1277965, at *2 (Del. Super. Apr. 30, 2009).
[50] *Id.*
[51] 2013 WL 5488656, at *5 (Del. Super. Oct. 2, 2013).
[52] *Id.* at *6.
[53] *See id.* (finding breach of contract claim time-barred on similar facts).

applies to First State's contract claim as well.[54] When evaluating the time of the relevant breach, the focus is the alleged breach of the principal and broker's contract – not the contract of insurance. Here, the alleged breach of the brokerage contract between First State and L & W occurred when First State received delivery of the policy in 2019.[55]

Finally, First State contends that both its negligence and contract claims are not yet ripe for resolution because its claim against Cincinnati remains unresolved. To the contrary, the outcome of the declaratory judgment action against Cincinnati does not affect a statute of limitations defense available to L & W. In fact, at most, the possibility that the Court may later determine that Cincinnati improperly denied coverage or that the policy exclusion was unconscionable would, at best, moot a portion of First State's claim against L & W. An unresolved coverage action against Cincinnati does not divest L & W of its right to rely on the applicable statute of limitations.

### C. The Court of Chancery has exclusive jurisdiction over First State's breach of fiduciary duty claim.

Finally, subject matter jurisdiction is a threshold inquiry. Under Delaware's bifurcated court system, the Court of Chancery has exclusive jurisdiction over equitable claims and the Superior Court has jurisdiction (although not exclusive) over legal claims.[56] This is true even when the plaintiff seeks only monetary

---

[54] *See F.A.M.E. LLC v. EmTurn LLC*, ___ A.3d ___, ___, 2026 WL 1065704, at *4 (Del. Apr. 20, 2026) ("Typically, a three-year statute of limitations applies to breach of contract claims.").

[55] *See Jadczak*, 2009 WL 1277965, at *4 (holding that breach of contract claim against insurance broker also accrued when policy took effect).

[56] *See Monroe Park v. Metro. Life Ins. Co.*, 457 A.2d 734, 738 (Del. 1983) ("Indeed, under article IV, section 7 of the Delaware Constitution, the Superior Court's jurisdiction relates to all civil causes at 'common law' while article IV, section 10 and 10 *Del. C.* § 341, make clear the Court of Chancery's jurisdiction to hear and determine all matters and causes in equity.").

damages.[57]  A breach of fiduciary duty claim is a quintessentially equitable claim.[58]  Accordingly, this Court has no jurisdiction to consider First State's fiduciary claim.  Nor would it be appropriate for the Court to address the sufficiency of First State's pleading regarding a claim over which it has no jurisdiction.

By statute, Delaware courts are not permitted to dismiss cases solely on the grounds that the court lacks subject matter jurisdiction, however.[59]  Instead, where the Superior Court lacks subject matter jurisdiction over a claim, 10 *Del. C.* § 1902 provides First State the ability to transfer the fiduciary claim to Chancery.[60]  Accordingly, First State may elect to transfer this claim to the Court of Chancery under Section 1902 in writing within sixty days.  If it does not, the claim will be dismissed with prejudice upon notification by L & W that First State has not transferred it.

## V.    CONCLUSION

For the reasons above, L&W's motion to dismiss is granted-in-part and deferred-in-part.  First State's claims in negligence and breach of contract are dismissed under the statute of limitations.  First State's breach of fiduciary duty

---

[57] *See Prospect St. Energy, LLC v. Bhargava*, 2016 WL 446202, at *4 (Del. Super. Jan. 27, 2016) ("Given the equitable nature of fiduciary duty claims, jurisdiction lies exclusively within the Chancery Court even where the relief sought is purely monetary."); *see also Bank of Delmarva v. South Shore Ventures, LLC*, 2014 WL 5390389, at *2 (Del. Super. Oct. 21, 2014) ("Violations of fiduciary relationships are purely equitable causes of actions, even if the only remedy sought is one of damages. The [Superior] Court thus cannot exercise jurisdiction.").

[58] *See QC Commc'ns Inc. v. Quartarone*, 2013 WL 1970069, at *1 (Del. Ch. May 14, 2013) (describing breach of fiduciary duty as "perhaps *the* quintessential equitable claim"); *see also Willey v. Scott*, 2025 WL 1166414, at *2 (Del. Super. Apr. 21, 2025) ("Causes of action predicated on a fiduciary relationship are grounded in equity and jurisdiction over such claims lies exclusively in the Chancery Court.").

[59] *See* 10 *Del. C.* § 1902 ("No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal.").

[60] *See Phila. Indem. Ins. Co. v. Bogel*, 269 A.3d 992, 1020 (Del. Super. 2021) (discussing the procedure in greater detail).

13

claim is hereby severed from the balance of its claims with leave for First State to transfer it to the Court of Chancery within sixty days.

**IT IS SO ORDERED.**

<u>/s/ Jeffrey J Clark</u>
Resident Judge